**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dionne Majalca-Williams, | No. CV-24-00385-TUC-RM (JR) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Dionne Majalca-Williams seeks judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) This matter was referred to Magistrate Judge Jacqueline M. Rateau for a report and recommendation and has been fully briefed. (Docs. 20, 26, 27.) Based on the administrative record (AR) and the parties' briefs, the Magistrate Judge recommends that the District Judge, upon her independent review, grant Plaintiff's complaint, reverse the Commissioner's decision, and remand the matter for the calculation and award of benefits.

## PROCEDURAL HISTORY

On September 25, 2019, Plaintiff Dionne Majalca-Williams filed an application for disability insurance benefits under Title II of the Social Security Act (the Act). (AR 109.) Plaintiff alleged she had been disabled and unable to work since February 3, 2018, due to Wegener's granulomatosis, fibromyalgia, systemic vasculitis, anxiety, and PTSD. (*Id.*) Prior to February 3, 2018, Plaintiff worked for twenty years in weight loss sales. (AR 263.) Plaintiff's disability application was denied upon initial review, (AR 37-57), and upon

reconsideration, (AR 1-6). After denial of her reconsideration request, Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 161-62.)

### First Administrative Hearing

On February 18, 2021, and May 19, 2021, Plaintiff's first administrative hearing was held. (AR 64-107.) After the hearing, ALJ Laura Speck Havens found Plaintiff had the severe impairments of Wegener's granulomatosis, osteoarthritis, obesity, anxiety disorder, and PTSD. (AR 40.) The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with limitations. (AR 45.) She also determined that Plaintiff could perform work that existed in significant numbers in the national economy. (AR 55-56.) The ALJ concluded that Plaintiff was not disabled under the Act. (AR 56.) The Appeals Council denied Plaintiff's request for review. (AR 1.)

### District Court Remand

On March 9, 2023, United States District Judge Jennifer G. Zipps remanded Plaintiff's case back to the Commissioner for a new hearing after adopting Magistrate Judge Lynette C. Kimmins' report and recommendation. (AR 1613-14.) The court found that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony, there was substantial evidence in the record to support a finding of fibromyalgia as a severe impairment, and the ALJ failed to support her medical opinion evaluations with substantial evidence. (AR 1618-29.) On remand, the ALJ was instructed to reevaluate whether Plaintiff's fibromyalgia was a medically determinable impairment, reconsider her assessment of Plaintiff's symptom testimony, consider Dr. Howe's March 2021 statement as other medical evidence, and reconsider the opinions of Drs. Dhiman and Whittman as they applied to the ALJ's RFC determination. (AR 1630.)

### Second Administrative Hearing

On April 10, 2024, Plaintiff's second administrate hearing was held. (AR 1548-71.) After the hearing, ALJ Havens found that Plaintiff had the severe impairments of Wegener's granulomatosis, obesity, anxiety disorder, depressive disorder, and PTSD. (AR 1524.) The ALJ determined that Plaintiff had the RFC to perform light work with

limitations. (AR 1528.) The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including housekeeper, marker, and small products assembler. (AR 1537-38.) The ALJ again concluded that Plaintiff was not disabled under the Act. (AR 1538.) The Appeals Council failed to address Plaintiff's request for review within 60 days. (*See* Doc. 20 at 3.)

**Second District Court Complaint**

On August 5, 2024, Plaintiff filed the complaint at hand requesting that her case be remanded to the Commissioner for the calculation and award of benefits or for a further administrative hearing. (Doc. 1 at 2.) Plaintiff alleges the ALJ committed harmful error by failing to follow the district court's instructions on remand. (Doc. 20 at 2.) On August 28, 2024, this case was reassigned to Magistrate Judge Rateau. (Doc. 11.) On October 4, 2024, the Commissioner filed the administrative record. (Docs. 12-15.) On January 24, 2025, Plaintiff filed her opening brief. (Doc. 20.) On April 25, 2025, the Commissioner filed its answering brief, (Doc. 26); and on May 9, 2025, Plaintiff filed her reply, (Doc. 27). This Report and Recommendation follows.

## BACKGROUND

Born in 1974, Plaintiff was forty-five years old when she filed for disability benefits. (AR 228.) She has a high school diploma and completed one year of college. (AR 68.) From 1998 to February 2018, Plaintiff worked at Jenny Craig as a sales representative. (AR 1553.) Beginning in 2014, Plaintiff was diagnosed with Wegener's granulomatosis and began experiencing significant medical issues, including chronic kidney disease. (AR 391.) In 2017, Plaintiff was also diagnosed with fibromyalgia. (AR 401, 589.) Plaintiff testified on multiple occasions about the severity of the symptoms of her conditions. (AR 68-82, 92-106, 1552-70.) At her first administrative hearing, Plaintiff testified that her supervisor pulled her aside and told her that she was not keeping up and that she needed to work faster. (AR 68.) At her latest administrative hearing, Plaintiff testified that she informed her supervisor that she was physically unable to do so and that she then put in her notice. (AR 1552.) Plaintiff has not worked since. (AR 1553.)

## CLAIM EVALUATION

An administrative law judge employs a five-step process to evaluate disability claims. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). The burden of proof is on the claimant at steps one through four. *Id*. To demonstrate a disability, the claimant must show that: (i) she is not working; (ii) she has a severe mental or physical impairment; (iii) the impairment meets or equals the requirements of a listed impairment under the Act, and; (iv) she has an RFC that precludes her from performing her past work. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Ford*, 950 F.3d at 1148-49. At step five, the burden shifts to the ALJ to show that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). This five-step determination is based upon the claimant's RFC, age, work experience, and education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). If the ALJ conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements for disability benefits through September 30, 2023. (AR 1523.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 3, 2018. (*Id*.) At step two, the ALJ found Plaintiff to have the severe medically determinable impairments of Wegener's granulomatosis, obesity, anxiety disorder, depressive disorder, and PTSD. (AR 1524.) At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination with other impairments, were disabling. (AR 1526.) The ALJ next determined that Plaintiff had the RFC to perform light work with limitations. (AR 1528.) In assessing Plaintiff's RFC, the ALJ found that her symptom statements were not entirely consistent with the medical evidence and other evidence in the record. (AR 1529.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 1537.) Proceeding to step five, the ALJ found that Plaintiff could have performed jobs that existed in significant numbers in the

1 national economy including housekeeper, retail trade marker, and small products
2 assembler. (AR 1537-38.) The ALJ concluded Plaintiff was not disabled at any time from
3 her alleged disability onset date of February 3, 2018, through September 30, 2023, the date
4 last insured. (AR 1538.)

## LEGAL STANDARD

Federal court review of social security determinations is limited. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are "based on legal error or are not supported by substantial evidence in the record as a whole." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000). "Substantial evidence is more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the court considers the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In deciding whether to reverse an ALJ's decision, the court reviews only those issues raised by the party challenging it. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## DISCUSSION

Plaintiff asserts that the ALJ committed harmful error by: (i) failing to consider her fibromyalgia a severe medically determinable impairment; and (ii) failing to support the ALJ's symptom discounting analysis with substantial evidence. (Doc. 20 at 8-19.) Plaintiff requests that the Court overturn the Commissioner's decision and remand the matter for calculation and award of benefits. (*Id*. at 19-21.) The Court finds that the ALJ misconstrued the fibromyalgia medically determinable impairment (MDI) criteria, failed to credit sufficient medical evidence in the longitudinal record by Plaintiff's treating rheumatologist, and failed to support her rejection of Plaintiff's symptom testimony with

specific, clear and convincing evidence. As such, the ALJ's decision should be vacated and this case remanded to the Commissioner for the calculation and award of benefits.

**I.     Erroneous Fibromyalgia Determination**

Plaintiff first asserts that the ALJ committed harmful error by failing to follow the district court's order with respect to her fibromyalgia. (Doc. 20 at 8-13.) The Court agrees.

Since 2012, the Social Security Administration has recognized fibromyalgia as a valid basis for a disability finding. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Social Security Ruling (SSR) 12-2P provides two sets of criteria for finding fibromyalgia a medically determinable impairment.[1] *Id.*; SSR 12-2P, 2012 WL 3104869, at *2-3. Under the second set of criteria, a person suffers from fibromyalgia if: (i) she has widespread pain that has lasted at least three months; (ii) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs,[2] or co-occurring conditions,[3] especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (iii) there is evidence that other disorders are not accounting for the pain. 2012 WL 3104869, at *3. While it appears that ruling 12-2P requires a diagnosing physician to provide the section II.B. criteria, the United States Court of Appeals for the Ninth Circuit has observed that documentation of a fibromyalgia diagnosis at that level of specificity is not mandated. *See Benecke v. Barnhart,* 379 F.3d

---

[1] The ALJ refers to these facts as the section II.A and section II.B criteria. (AR 1524-25.)

[2] Fibromyalgia symptoms and signs include: "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2P, at *3 n.9.

[3] Fibromyalgia co-occurring symptoms include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. SSR 12-2P, at *3 n.10.

- 6 -

587, 590, 594 (9th Cir.2004) (cleaned up) (ruling that ALJ erred by "requiring objective evidence for a disease that eludes such measurement"); *Contreras v. Astrue*, 378 F. App'x 656, 657-58 (9th Cir. 2010) (unpublished decision ruling that failure to locate the number or location of a claimant's tender points is an insufficient reason to reject an otherwise valid fibromyalgia diagnosis).

Upon initial review, the district court concluded that the ALJ erred by failing to find Plaintiff's fibromyalgia a severe impairment at step two. (AR 1623.) The court ruled that there was substantial record evidence relevant to an evaluation of whether fibromyalgia qualified as an MDI. (AR 1624.) The court highlighted the findings of Plaintiff's rheumatologist, Dr. Shannon Howe, her nephrologist, Dr. David Whittman, and an examining podiatrist, Dr. David Gooch. (AR 1624-25.) The court reversed the ALJ's decision and instructed her to "provide a more thorough explanation as to why the record does not support a fibromyalgia MDI" on remand. (AR 1626.) The court also ordered the ALJ to develop the record if she found insufficient evidence of fibromyalgia to make a severe impairment finding at step two of the disability determination. (*Id*.)

**A.     ALJ Conflates Standard for Fibromyalgia Criteria**

On remand, The ALJ found that the record did not establish fibromyalgia as an MDI because the record did not include evidence of six or more fibromyalgia symptoms, signs, or co-occurring conditions by a diagnosing physician. (AR 1525.) The ALJ summarized her determination by asserting, in pertinent part:

> The treating physicians diagnosed the claimant with fibromyalgia, but did not provide the evidence required by sections II.A. or II.B. to establish it as an MDI. As noted above, the record does not include evidence of tender points to satisfy II.A. However, the record shows the claimant's physicians did not provide the evidence required by section II.B. The claimant's physicians gave a diagnosis, or simply noted a historical diagnosis, of fibromyalgia. However, they did not provide evidence, either from examination or review of the claimant's records, of six or more symptoms, signs, or co-occurring conditions to support the diagnosis. Even at times the physicians did note symptoms of fibromyalgia when discussing the diagnosis or impairment, the discussion only included a few signs or symptoms such as myalgia, fatigue, or dizziness. The diagnoses did not include support by

> evidence of six or more symptoms, signs, or co-occurring impairments as required by SSR 12-2p.
>
> ….
>
> Although the record does show six or more symptoms, signs, or co-occurring conditions, the record does not include a diagnosis by a physician providing evidence of six or more of these. Some symptoms were reported to one physician, and some signs were noted by another. No diagnosis was given with evidence to support it as required by SSR 12-2p. Accordingly, the claimant's diagnosis of fibromyalgia does not satisfy the requirements to establish an MDI under SSR 12-2p.

(AR 1525) (internal citations omitted).

This determination conflates the legal standard for finding fibromyalgia an MDI and fails to account for relevant medical evidence in the longitudinal record. The ALJ's ruling misinterprets SSR 12-2P by requiring the diagnosing physician to accompany his or her fibromyalgia diagnosis with the six or more fibromyalgia symptoms, signs, or co-occurring conditions that section II.B. requires in the same medical record. This interpretation lacks support in the plain language of SSR 12-2P and the Ninth Circuit's interpretation of the ruling and raises the fibromyalgia MDI determination to a nearly insurmountable standard. *Cf. Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000) (explaining that an agency's interpretation of its own regulation is not entitled to deference when the regulation is unambiguous). The ALJ's faulty interpretation is also contradicted by section III.A.1 of the ruling, which states, "[w]hen a person alleges [fibromyalgia], *longitudinal records* reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both *the existence* and severity of the impairment. 2012 WL 3104869, at *3 (emphasis added). Because the ALJ erred in promulgating an incorrect standard for a fibromyalgia MDI determination, the Commissioner's decision should be remanded. *See Weiskopf v. Berryhill*, 693 F. App'x 539, 542 (9th Cir. 2017) (unpublished decision remanding case back to Commissioner because of ALJ's legal error).

**B.     Longitudinal Records Support Fibromyalgia MDI**

The ALJ also erred by failing to credit information in Plaintiff's longitudinal records

to support a fibromyalgia medically determinable impairment. Since March 2014, Dr. Howe has been Plaintiff's rheumatologist at ACP Arthritis Associates in Tucson, Arizona. (AR 391, 593.) Dr. Howe first diagnosed Plaintiff with fibromyalgia on October 24, 2017, (AR 589), and reiterated the diagnosis on multiple occasions, (*see e.g.*, AR 401, 556, 569, 573). Dr. Howe reviewed Plaintiff's medical history and conducted her physical exams over a seven-year period. (*See* AR 391-406.) Dr. Howe's treatment records indicate repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, including: (i) fatigue, (AR 403, 552, 557, 561, 566, 570, 578, 582, 586, 678); (ii) depression, (AR 554, 567, 573, 583); (iii) anxiety, (AR 391-94, 556, 565, 573, 582, 586); (iv) muscle pain, (AR 399, 400, 403, 552, 557, 570, 575, 590); (v) numbness (AR 404, 405); and (vi) insomnia (AR 575, 808, 1351).[4] This evidence is more than sufficient to satisfy the diagnostic fibromyalgia criteria and requires the ALJ's decision to be set aside. *See Thai v. Kijakazi*, No. 23-CV-639-BLM, 2023 WL 8719460, at *2 (S.D. Cal. Dec. 18, 2023), *aff'd sub nom. Thai v. Colvin*, No. 24-329, 2024 WL 5001823 (9th Cir. Dec. 6, 2024) (instructing that the court must set aside the ALJ's decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching her decision).

### C. Evidence Demonstrates Other Diagnoses Excluded

In addition to misstating the legal standard for finding fibromyalgia a medically determinable impairment and failing to credit relevant fibromyalgia symptom evidence in record, the ALJ also erred by failing to recognize section II.B.3 criteria in Dr. Howe's treatment notes. Ironically, where the ALJ required the presence of six or more fibromyalgia symptoms, signs or co-occurring conditions by the diagnosing physician in one medical record to satisfy the section II.B.2 criteria, the ALJ had no qualms with going through the longitudinal records of other providers to determine that the section II.B.3 criteria were not satisfied. (*See* AR 1525-26.) In so doing, the ALJ failed to follow her own overly narrow interpretation of the ruling and again committed error.

---

[4] These record citations are not duplicative, i.e., fibromyalgia symptoms, signs, and co-occurring conditions are not counted twice if they appear in a treatment note *and* an earlier or later reference to or summary of that note.

Section II.B.3 of SSR 12-2P requires a diagnosing physician to provide evidence that other disorders that could cause fibromyalgia symptoms, signs, or co-occurring conditions were excluded. 2012 WL 3104869, at *3. The ruling goes on to explain that it is common in fibromyalgia cases to find evidence of examinations and testing that rule out other disorders that could account for the claimants symptoms and signs. *Id*. The ruling provides that this type of evidence may include imagining and other laboratory tests such as complete blood counts (CBC), erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor. *Id*.

District courts within the Ninth Circuit have interpreted SSR 12-2P's third criterion broadly. In *Thai v. Kijakazi*, the court determined that there was evidence indicating that plaintiff's pain and other symptoms were caused by her fibromyalgia and that the plaintiff's treating doctors eliminated other medical causes for her pain. No. 23-CV-639, 2023 WL 8719460, at *10 (S.D. Cal. Dec. 18, 2023), *aff'd sub nom. Thai v. Colvin*, No. 24-329, 2024 WL 5001823 (9th Cir. Dec. 6, 2024). In *Sheila G. v. Commissioner of Social Security*, the court explained that the ruling does not require that treating or other physicians make definitive statements expressly excluding other disorders and that "[i]t is enough … if the record contains objective evidence that plaintiff's physicians tested for other possible conditions and either did not diagnose them or did not find that they fully accounted for plaintiff's symptoms." No. C18-5769, 2019 WL 6607065, at *4 (W.D. Wash. Dec. 5, 2019). And in *Jackson v. Commissioner of Social Security Administration*, the court ruled that the ALJ erred by failing to discuss how the plaintiff's co-occurring conditions precluded the finding that her fibromyalgia was a medically determinable impairment. 501 F. Supp. 3d 708, 714 (D. Ariz. 2020).

Here, there is sufficient evidence establishing the section II.B.3 criterion was met. Dr. Howe identified fibromyalgia as the cause of Plaintiff's pain and anxiety while ruling out Wegener's granulomatosis as the source of Plaintiff's pain symptoms. (AR 556.) Dr. Howe's opinion as Plaintiff's treating rheumatologist is particularly relevant because she establishes all three section II criteria, and her "specialized knowledge is particularly

- 10 -

important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." *Revels*, 874 F.3d at 664 (cleaned up). Dr. Howe also noted that fibromyalgia was the only "tenable explanation" for Plaintiff's myalgia symptoms and that it was the only condition which could be linked to Plaintiff's centrally mediated pain.[5] (AR 556.) Dr. Howe's treatment notes reflect that she ran myriad tests on Plaintiff to exclude other possible symptom sources. (*See* AR 506-550.) Those tests included CBC tests, (*id.*), normal electromyography (EMG) nerve conduction tests with symptoms that "wax and wane," (AR 565), and negative antineutrophil cytoplasmic antibody (PR3) tests, (*id.*). This medical evidence is sufficient to satisfy the section II.B.3 criterion and requires the ALJ's decision to be set aside. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (instructing that a ruling court may set aside a denial of benefits if it is not supported by substantial evidence or is based on legal error).

## II.    Symptom Testimony Improperly Discounted

Plaintiff next asserts that the ALJ improperly discounted Plaintiff's symptom testimony by failing to support her determination with clear and convincing evidence. (Doc. 20 at 14-19.) The Court agrees.

When a claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged, and the record fails to contain evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The clear and convincing standard is the most demanding required in Social Security cases. *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014). Under this standard, the ALJ must identify what testimony is not credible and provide evidence that undermines those specific claims. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

---

[5] This assessment directly contradicts the ALJ's determination that "[t]he claimant's granulomatosis is a possible cause of [her] weakness and dizziness, as well as myalgia and the record does not show it was excluded as such." (AR 1525.)

- 11 -

testimony." *Orteza*, 50 F.3d at 750. If the ALJ fails to provide specific, clear, and convincing reasons for discounting a claimant's symptom testimony, then the ALJ's determination is not supported by substantial evidence. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

Upon initial review, the district court remanded Plaintiff's disability case back to the Commissioner because the ALJ erred in evaluating Plaintiff's symptom testimony. (AR 1627.) The court ruled that the ALJ "failed to identify with specificity any clear and convincing reasons to discount it." (AR 1630.) The court also observed that the evaluation of Plaintiff's testimony was conclusory. (AR 1628.) On remand, the ALJ was instructed to reconsider her assessment of Plaintiff's symptom testimony and to consider Dr. Howe's March 2021 statement as other medical evidence in her assessment. (AR 1630.)

### A.  Plaintiff's Symptom Testimony

On April 10, 2024, Plaintiff once again provided testimony at an administrative disability hearing in front of the ALJ. (AR 1548-66.) Plaintiff testified that she recently lost thirty pounds due to stress, she slept an average of five to six hours per night, and her weight loss failed to positively impact her symptoms. (AR 1557-58, 1561.) She explained that fibromyalgia was "kick[ing her] butt" and that she felt stiff every morning. (AR 1561.) Plaintiff stated that her neck, elbows, hips, ankles, bottom of feet, and lower back felt like there was glass in them. (AR 1562.) She also testified that her ears hurt from Wegener's granulomatosis and that "90 percent of the time[, she has] some sort of pain in [her] body." (*Id.*) Plaintiff explained that even on her good days she could not do an activity consistently for four hours. (AR. 1565.) She testified that she did not do anything around the house for two hours straight. (*Id.*) Plaintiff recalled that when she was working five hours a day, she would go home and take a three-hour nap because she was so fatigued. (AR 1566.) When pressed by the ALJ, Plaintiff stated that she could stand for 5 minutes before needing to sit down, she could sit for about 10 to 15 minutes before moving, and the most she could lift was a gallon of milk. (AR 1562.)

On remand, the ALJ rejected Plaintiff's symptom testimony by repeating many of

the same errors the district court highlighted in its first order. The ALJ provided the following analysis to discount Plaintiff's testimony:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the record does not show the level of symptoms and limitations alleged. The claimant's allegations that she is in extreme pain over 90% of the time is not consistent with the examination evidence that regularly showed she was in no acute distress or otherwise noted no pain signs. Her claim that she can stand or walk no more than five minutes at a time is contradicted by examinations showing normal gait and station. The record does not show difficulty ambulating or the need to sit after being on her feet for only five minutes. Her testimony that she can sit no more than 15 minutes at a time is not consistent with the treatment record, which showed no significant limitations sitting. Although the claimant reported feeling fatigue, joint and muscle pain, and muscle weakness, the record contains no objective evidence to support these. However, because no clear and convincing evidence exists to contradict her claims of fatigue, pain, and weakness, these are accommodated with the limitation to light exertion with the postural and environmental limitations listed above. The finding that the claimant can perform light work is supported by the objective medical records showing no significant limitations sitting, standing, or walking. The examinations showing normal gait and station with no significant limitations sitting are clear and convincing evidence that the claimant's limitations are not as great as in her testimony. In addition to objective evidence, her testimony is also contradicted by her reports to treatment providers that her symptoms improved with treatment and that she was doing well.

(AR 1533) (internal citations omitted).

### B.   Analysis Unsupported by Substantial Evidence

As Plaintiff alleges in her uncontested opening brief, the ALJ's analysis fails to constitute specific, clear, and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 20 at 14.) First, the ALJ mischaracterizes Plaintiff's testimony.[6] Second, the ALJ improperly rejects some of Plaintiff's fibromyalgia symptom complaints based solely on a

---

[6] Plaintiff testified that "90 percent of the time[,]" she has "some sort of pain in [her] body." (AR 1562.) The ALJ mischaracterizes this testimony asserting that Plaintiff claims "she is in *extreme* pain over 90% of the time[.]" (AR 1533 (emphasis added).)

- 13 -

lack of medical evidence to fully corroborate the alleged severity of pain.[7] Third, the ALJ's justifications lack substantiation by citation to the record.[8] *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009) (citation omitted) (emphasis added) (ruling that to support a lack of credibility finding, the ALJ is required to "point to *specific facts* in the record which demonstrate that [the claimant] is in less pain than she claims"). Fourth, normal gait and station observations are not inconsistent with Plaintiff's symptom testimony, as they fail to demonstrate Plaintiff can sit and stand for prolonged periods of time. *See Garrison*, 759 F.3d at 1018 (observing the ALJ improperly singled out a few period of temporary well-being from a sustained period of impairment to discredit the claimant). The district court highlighted this fallacy in its first remand order. (AR 1628.) Fifth, at least one of the treatment notes which indicates "normal gait and station" also indicates "increased fatigue[,]" "ear pina [sic] discomfort[,]" "[c]hronic right flank pain[,]" "muscle weakness[,]" and "dizziness[.]" (AR 3875.) The ALJ's selective summary of the record gives the impression the ALJ cherry-picked evidence to support her determination. *See Lannon v. Comm'r of Soc. Sec. Admin.*, 234 F. Supp. 3d 951, 960 (D. Ariz. 2017) (reiterating that ALJs cannot cherry-pick mixed results to support their findings). Lastly, the ALJ's analysis fails to recognize more recent treatment notes that indicate corroborative

---

[7] *See* ALJ's assertions that "[t]he record does not show difficulty ambulating or the need to sit after being on her feet for only five minutes[,]" and "[a]lthough the claimant reported feeling fatigue, joint and muscle pain, and muscle weakness, the record contains no objective evidence to support these." (AR 1533.) An ALJ errs by "effectively requiring objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594 (cleaned up); *see also Hamilton-Carneal v. Colvin*, 670 F. App'x 613, 614 (9th Cir. 2016) (unpublished decision finding harmful error where ALJ determined claimant was not credible due to the absence of objective medical evidence to corroborate his testimony).

[8] The only citation by the ALJ to the Administrative Record in her symptom discounting analysis is to two treatment notes: "(See e.g.[,] 4F p. 1; 21F p. 55)." Notably, page one of Exhibit 4F says nothing about improvement of symptoms with treatment or doing well. (AR 391.) Page 55 of Exhibit 21F is an August 26, 2019 soap note from FNP Elizabeth Havlis documenting Plaintiff's arrival for her Rituxan infusion treatment at TMC Infusion Center. (AR 981-84.) The note indicates, "[patient] states she is doing well today, no recent lung of [sic] sinus infections." (AR 982.)

1 medical findings of "joint swelling, joint stiffness, unsteady gait, fatigue, and allergic
2 reactions to food / environment." (AR 1949.) As such, the ALJ fails to provide specific,
3 clear and convincing reasons to reject Plaintiff's symptom testimony, and her disability
4 decision should be remanded to the Commissioner.

**III.     Remand for Benefits Appropriate**

Plaintiff's final request is for her case to be remanded to the Commissioner for the calculation and award of benefits. (Doc. 20 at 20-21.) The Commissioner concedes this case should be remanded but argues that it should be remanded for further administrative proceedings as opposed to award of benefits because: (i) remand for further proceedings is the appropriate remedy for step-two violations; (ii) the record is not free from conflicts and ambiguities, which warrants remand for further proceedings; and (iii) the record creates doubt whether Plaintiff is disabled. (Doc. 26 at 5-8.) These arguments are unpersuasive, and Plaintiff's case should be remanded for the calculation and award of benefits.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded for additional evidence. *Revels*, 874 F.3d at 668. However, where: (i) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" (ii) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" and (iii) "the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," courts remand for an award of benefits. *Id.* (cleaned up).

Here, all three conditions have been met. There is no need to further develop the record or convene a third administrative hearing. The current record includes over 4,000 pages of relevant information detailing Plaintiff's treatment notes and medical records over

the past ten years. (AR 1-4063.) Plaintiff's rheumatologist repeatedly diagnosed Plaintiff with fibromyalgia, meticulously tracked her other serious medical conditions, and offered the opinion that Plaintiff's conditions left her "handicapped," "disable[ed]," and "not employable." (AR 556, 573, 1146.) The ALJ failed to provide legally sufficient reasons to reject Plaintiff's symptom testimony and Dr. Howe's March 10, 2021 statement that Plaintiff's conditions were disabling.[9] She also erred by failing to support her symptom discounting analysis with substantial evidence, by misinterpreting the legal standard for fibromyalgia MDI criteria, and by failing to credit record evidence that satisfied a valid fibromyalgia MDI determination. A separate district court also scrutinized the record in this case and found nearly identical errors. (*See* AR 1613-30.) It would serve no purpose to remand this case to the Commissioner with similar instructions to the ones the ALJ has been unable to follow. Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand.

The Commissioner's arguments to the contrary are unavailing. Relevant precedent demonstrates that a district court has discretion to remand a disability case to the agency for payment of benefits in situations similar to the one at hand. *See, e.g.*, *Revels*, 874 F.3d at 669 (remanding for benefits where ALJ failed to provide legally sufficient reasons to reject opinion of claimant's treating rheumatologist and for improperly rejecting claimant's symptom testimony); *Benecke*, 379 F.3d at 594 (finding district court abused its discretion by remanding case for further proceedings where "ALJ erred in discounting the opinions of [the claimant's] treating physicians, relying on his disbelief of [the claimant's] symptom testimony as well as his misunderstanding of fibromyalgia"); *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (remanding for benefits where ALJ erred in rejecting opinion of

---

[9] The ALJ rejected Dr. Howe's statement citing the same "clear and convincing evidence" that she used to improperly discount Plaintiff's symptom testimony. (*See* AR 1533.) The ALJ also offered the conclusory assertion that Dr. Howe's statement "addresse[d] issues reserved to the [C]ommissioner." (*Id.*); *see Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted) (observing that while the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, … he cannot reject them without presenting clear and convincing reasons for doing so").

claimant's treating physician and her subjective symptom testimony); *Sprague*, 812 F.2d at 1232 (remanding for benefits where substantial evidence failed to support ALJ's decision and no legitimate reasons justified disregarding treating physician's opinion). The Commissioner's suggestion that the administrative record must be "free from conflicts and ambiguities" before remand for a benefits award is also misguided.[10] The Commissioner's remaining objections are nearly identical to the ones he raised in response to Plaintiff's first district court appeal, (*see* Doc. 23 in 21-cv-447-JGZ-LCK), have been succinctly addressed by the previous court, (*see* AR 1621 (rejecting Commissioner's argument that Plaintiff's alleged improvement with treatment provided a valid basis to support ALJ's analysis and reiterating that Plaintiff was not appealing the ALJ's handling of her mental health impairments and symptoms); AR 1627 (reiterating Plaintiff did not contest Dr. D'Ambrosio's opinion because it addressed only psychological issues); AR 1627-28 (rejecting Commissioner's argument that normal gait, station, and strength findings were inconsistent with physician's recommended functional limitations); AR 1629 (concluding ALJ failed to make valid supportability and consistency findings concerning Dr. Dhiman's opinions), and are adopted in this recommendation. Accordingly, the ALJ's disability determination should be vacated and this case remanded to the Commissioner for the calculation and award of benefits.

**RECOMMENDATION**

The Magistrate Judge recommends that the District Judge, upon her independent review, grant Plaintiff's complaint, (Doc. 1), vacate the ALJ's decision, and remand this case to the Commissioner for the calculation and award of benefits. Under Federal Rule of Civil Procedure 72, any party may serve and file written objections within fourteen (14) days of being served with a copy of this Report and Recommendation, and a party may respond to another party's objections within fourteen (14) days after being served with a

---

[10] The "free from conflict and ambiguities" language the Commissioner cites as controlling appears to be taken from dictum in *Treichler*, 775 F.3d at 1103-04, which references legal findings taken from *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004), a decision where the claimant's case was remanded for an award of benefits.

- 17 -

copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted by the District Judge. If objections are filed, the parties shall use the following case number: **24-CV-385-RM**. Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 26th day of June, 2025.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge